H. C. EDRINGTON V. F. R. PRIDHAM.

(Case No. 2123.)

1 RECEIVER — ORDER OF APPOINTMENT — DISOBEDIENCE — CONTEMPT — PRACTICE —
The duly appointed receiver of a corporation exhibited his order of appointment to its treasurer, and demanded the funds of the corporation in his hands. The treasurer declined to give them up, on the ground that the order was not sufficiently specific to justify him in so doing. The receiver applied for an order of court commanding the treasurer to show cause why "he should not pay to the receiver the money specified, and upon a hearing hereof for an order commanding such payment, under such penalties as the court may deem proper to enforce obedience to the decree." *Held* ·

(1) That if the receiver was appointed upon an insufficient showing the order was erroneous and subject to revision, but not void or open to collateral attack;

(2) The treasurer, having notice of the order, was bound in duty to turn over the money in his possession to the receiver, on demand. To act upon a technical construction of the words of the order and place himself in a position in which he could not comply, in case his interpretation proved incorrect, was rashly contemptuous;

(3) That he proceeded under the advice of counsel might mitigate, but could not excuse, the offense. (Authorities cited.)

(4) The punishment for contempt is by fine or imprisonment, or both. There is no authority for awarding in such proceedings a judgment in favor of the private prosecutor for a sum of money to be collected by execution, and the receiver in this case was not entitled to such a judgment against the treasurer for the amount withheld;

(5) See opinion for proceedings held not to constitute a civil suit sufficient to support a judgment for the funds withheld from the receiver ;

(6) A judgment, such as only a civil suit would authorize, rendered in a proceeding which neither the court nor either of the parties considered or treated as a civil suit in the inception and progress, is scarcely void, but certainly irregular.

ERROR from Victoria.    Tried below, before the Hon. H. Clay Pleasants.

The Texas Continental Meat Company, a corporation under the laws of Texas, was, up to about April 16, 1884, engaged in the business of slaughtering, refrigerating and selling dressed beef, at two slaughtering and refrigerating establishments, one of which was located at Victoria, and the other at Fort Worth. The business of the company was managed by a board of thirteen directors, six of whom were residents of Victoria, or vicinity, and managed the business at Victoria, and the remaining seven were residents of Fort Worth, and conducted the business there, having their chief secretary and treasurer at Victoria, and a local secretary and treasurer at Fort Worth. The domicile of the company was at Victoria.

A. F. Higgs was, at and before April 3 and 16, the president of the company; H. C. Edrington was the secretary and treasurer of the company at Fort Worth, and had in his possession, as treasurer, about $12,000, funds of the company. J. M. Mathis was vice president, and G. A. Levi, secretary and treasurer, both residing at Victoria. The company was then largely indebted in, to wit : The sum of $100,000, and among others it was indebted to Ayers & Cannon, of Galveston, in the sum of $7,000, and to the firm of A. Levi & Co., (of whom G. A. Levi, secretary and treasurer at Victoria, was a member) of Victoria, in the sum of $10,000. On April 16, 1884, Ayers & Cannon and A. Levi & Co., together with A. F. Higgs, the president of the company, filed their petition in the district court of Victoria county, praying for the appointment of a receiver. They alleged, in substance, in their bill, that prior to its filing the company had pledged to the plaintiffs (except Higgs), all the money and other assets readily convertible into money. On the same day the district court of Victoria county, at Chambers, made the following order, to-wit :

"Having considered the foregoing petition and heard the parties thereto, it is hereby ordered that F. R. Pridham be, and he is hereby

appointed receiver, as prayed for in the petition, with power to take possession of all property of the defendant, The Texas Continental Meat Company, in whose possession soever it may be found, except it may be in custody under the writ or order of some other court, and preserve the same until the further order of this court."

The receiver immediately filed his bond and oath.

On April 21, 1884, the majority of the board of directors, to-wit: seven thereof, constituting the local board at Fort Worth, ordered Edrington, as treasurer, to pay out and disburse the sum of $2,500, for the purpose of employing attorneys and paying legal expenses in defending the action brought by Ayers & Cannon, et al. On April 20, the receiver, defendant in error, exhibited the order of the court, made at Chambers on April 16; but the affidavits of plaintiff in error and defendant in error were conflicting as to whether a demand was made upon Edrington by the receiver for the money in his hands at that time. At all events, the order of the court was exhibited on the 20th by the receiver to Edrington, who declined to pay the money over, alleging that the order was not sufficiently specific to justify him in doing so. On April 27, 1884, the receiver obtained a more specific order for the delivery of all money, as well as property, to him. With this last order Edrington complied, by delivering to the receiver all the money then in his hands.

On May 16, 1884, the defendant in error made application to the court for an order commanding plaintiff in error to appear at a day named during that term of the court, and show cause why "he should not pay over to the receiver the amount of money above specified, and upon a hearing hereof for an order commanding the immediate payment of the money to the receiver, under such penalties as the court may deem proper to enforce obedience to its decree and legal authority. Whereupon the court made the following order :

"AYERS & CANNON ET AL.
vs. } From Minutes 1928, May 16, 1884.
TEXAS CONTINENTAL MEAT CO.

This day coming on to be heard the application of the receiver herein for an order of the court upon H. C. Edrington, to show cause why he did not pay over certain funds in his hands, alleged in his application, this day filed, to belong to the defendant company, an order is hereby made and entered in this cause as prayed for in the petition, and the hearing hereof fixed at the day of this term, when the cause shall be regularly called for trial or disposition. And, thereupon J. W. O'Neill, Esq., entered an appearance for H. C. Ed- ..

rington to answer said order at the time hereinbefore designated.''
On May 29, 1884, plaintiff in error, Edrington, filed his answer
under oath to the rule, in substance as follows: That he was the
local secretary and treasurer of the company at Fort Worth; that by
the unanimous vote of the entire board he was made such secretary
and treasurer, and placed under the exclusive direction and control of
the portion of the board residing and managing the company's
affairs at Fort Worth; that all his disbursements of money as such
treasurer in the course of the company's business had been made under
the direction of the local board, and that for some months prior to
April 20, 1884, the local board at Fort Worth constituted a majority of
the entire board; that the order of the court of April 16, 1884, was
exhibited to him by the receiver on April 20, 1884, without any spe-
cific demand upon him for the money in his hands, but he did not
consider it sufficiently specific to protect him in the payment of the
money to the receiver; that, subsequently, on April 21, 1884, he had
disbursed the sum of $2,500 under the order of the local board, and
that, afterward, on April 27, 1884, the receiver having presented to
him a more specific order requiring him to pay over all money in his
hands, he did, in compliance therewith, pay over to the receiver all
the money then in his hands; but that, in the mean time, and before
the presentation of the last named order, the local board at Fort
Worth had ordered the disbursement of the sum of $2,500, and that
he had, in good faith, and in compliance with the order of the board,
disbursed and paid out that amount; that he intended no contempt of
court, and was amply able to respond in a civil suit for damages; to
which answer the receiver replied by affidavit, admitting, substan-
tially, the statements therein, except allegations as to the failure on
his part to make a specific demand for the money in the first instance;
these he denied, and alleged that he had made a specific demand, and,
in substance, that he, Edrington, had acted in bad faith.

After the entry of the order of May 16, 1884, the court took no
further action in the matter of the rule against Edrington, although
the main case was regularly called for trial, and interlocutory judg-
ment rendered therein, on November 29, 1884, until May 30, 1885,
when the court rendered the following judgment:

"AYERS & CANNON ET AL. ⎫
vs. ⎬
TEXAS CONTINENTAL MEAT CO. ⎭

Now coming on to be heard the motion of the receiver herein filed
on May —. 1884, against H. C. Edrington, the local treasurer and

secretary of said defendant company at Fort Worth, seeking to recover from H. C. Edrington the sum of $2,500, in his hands as treasurer, illegally held from the receiver, and the motion, together with the answers of Edrington, and the proof therein submitted being examined by the court, and the court being fully advised therein, is of the opinion that the receiver herein is entitled to a judgment against Edrington for the full amount in said motion, charged to be illegally withheld from him by H. C. Edrington. Therefore it is ordered, adjudged and decreed by the court, that the receiver, F. R. Pridham, do have and recover from H. C. Edrington the sum of twenty-five-hundred ($2,500) dollars, for which he may have his execution.''

It does not appear from the judgment that either plaintiff in error or his counsel was present. From this judgement, writ of error was sued out.

*J. M. O'Neill* and *Ball & McCart*, for plaintiff in error, cited : Pinchain v. Collard, 13 Tex. 333 ; Moore v. Guest, 8 Tex. 117 ; Menard v. Sydnor, 29 Tex. 257 ; Neill v. Newton, 24 Tex. 202 ; Crow v. State, 24 Tex. 12 ; Albany City Bank v. Schermerhorn, 9 Paige 372 ; Leverich v. Loby, 7 La. Ann. 445 ; Souder v. Stout, 3 N. J. L. 413.

*Stockdale & Proctor*, for defendant in error, on *res adjudicata*, cited : Swiggart v. Harber, 4 Scammon 364 ; Saint v. Tupper 4 Smedes & Marshall, 261 ; Libby v. Rosenkrans, 55 Barb. 262 ; Matter of Day on complaint of Benson, 34 Wis. 638 ; Bowling Green Savings Bank v. Todd et al., 64 Barb. 146.

On the authority of the receiver and treasurer, they cited : Taylor on Corp., sec. 542 and cases cited ; Davis v. Gray, 16 Wallace 216 ; Bowling Green Savings Bank v. Todd et al. (cited above); Taylor on Corp., secs. 615, 616, 618 ; Morawetz on Corp., sec. 559 ; Cowdrey v. R'y Co., 1 Woods 331; Ames v. Birkenhead Docks, 20 Beav. 350 ; Reeves v. Cox, 1 Irish Eq. 247.

ROBERTSON, ASSOCIATE JUSTICE.—In the suit of Ayres & Cannon and others against the Texas Continental Meat Company, the plaintiffs prayed for the appointment of a receiver, and the court, having jurisdiction of the subject matter and the parties, acted within its power in granting that relief. If, in making the appointment, the court proceeded upon an insufficient showing, the order was erroneous and subject to revision, but not void or open to collateral attack. Dean v. Thatcher, 32 N. J. L. 470 ; Wood v. Blythe, 46 Wis. 650.

The plaintiff in error, having notice of the order made in the main case, as the secretary of the Coutinental Meat Company, was bound in duty to obey the order and turn over to the receiver on demand the company's property, which included money in his possession. Lanshaw *v.* Tracy, 4 Bissell 490. A decent respect for the authority of the court would have dictated the propriety of an appeal to it for the solution of any real doubt as to the extent of the order. For an agent of the company to act upon a questionable and technical construction of the words of the order, and place himself in a position in which he cannot comply if it is determined that his interpretation is wrong, is rashly contemptuous. That he has proceeded under the advise of counsel may mitigate, but cannot excuse, the offense. R. R. Co. *v.* Johnson, 8 Stew. (N. J.) 422; Smith *v.* Cook, 39 Ga. 191; Capet *v.* Parker, 3 Sandf. (N. Y.) 662. He, nevertheless, knew that he was disobeying the order, unless its true intent should happen to be his restrictive interpretation.

The proceeding for contempt can properly end only in a judgment of acquittal and discharge, or conviction and sentence. The punishment is by fine or imprisonment, or both. R. S., art. 1120; Rapalji on Cont., sec. 128. The proceeding is generally regarded as a prosecution for an offense. Id. sec. 95; Passmore Williamson's case, 26 Pa. St. 1. We find no authority for awarding in such proceeding, as a softer penalty, or as a means to the same end, a judgment in favor of the private prosecutor for a sum of money to be collected by execution. In some jurisdictions for contempt in civil cases, depriving a litigant of some right, the court is authorized by statute to require the offender to restore the *status quo*, or pay the damages, but the order is enforced by commitment. Robins *v.* Frazier, 5 Heisk. (Tenn.) 100; Re Day, 34 Wis. 638.

The statute authorizes the district court to impose for contempt a fine not exceeding $100. But if this limitation is unauthorized (Rapalji, sec. 11) we cannot construe a judgment in favor of the receiver for $2,500, to be collected by execution, as an exercise by the court of its inherent power to fine for contempt. Such a judgment does not vindicate the dignity of the court; it redresses private injury. The prosecution of the plaintiff in error for contempt did not warrant the civil judgment against him.

It yet remains to be determined whether the proceedings may not be considered as a civil suit sufficient to support the judgment. The receiver's affidavit states facts sufficient to show the civil liability, and the answer confesses enough of them to warrant in a regular suit the judgment rendered. But there was no prayer for any such

judgment, the receiver did not consider his affidavit or motion as the institution of a suit against the plaintiff in error; it is not entitled as a separate case, but as a part of the original suit; it is not signed by counsel, or docketed; no citation is prayed, but instead an order to show cause is asked, returnable during the term then pending; the prayer is, that, upon hearing, the respondent be ordered to turn over the money to the receiver, to be enforced by the infliction of the penalties for contempt.

The court did not consider the proceeding as a regular suit; but it directs the issue of an order to show cause returnable during the current term, and sets the hearing for the day during the term when the main case is called. The respondent treated the proceeding as a prosecution for contempt; he filed his answer in the form of an affidavit entitled in the original suit, and seems to have made no further appearance. At the next term the court ordered that the "motion" be continued. More than twelve months after the respondent's answer was filed, the receiver's "motion" came on to be heard, and the motion, answer and proofs (supposed to have been Johnson's affidavit) "being examined by the court," the judgment complained of was rendered. The language of the judgment does not indicate that there was a trial as in regular suits. A judgment has been entered, such as only a civil suit would authorize in a proceeding which neither the court nor either of the parties considered or treated as a civil suit in its commencement, or progress, or trial. Such a judgment would scarcely be void, but it is surely irregular. The proceeding commenced by the receiver could have been changed into a regular suit in its progress, but to warrant the judgment the metamorphosis should be complete before trial. Valuable rights in the practice and mode of proceeding may depend upon the nature of the proceeding. These rights are lost if the case is treated by the court and the parties, in its progress and trial, as one kind of suit, and in the final judgment it is treated by the court as another sort of suit. The judgment rendered was not prayed for by the receiver, it was not warranted by the proceedings upon which it is predicated, and must be reversed, and, that the district court may make such orders as will accomplish the merits of the case, the cause is remanded.

REVERSED AND REMANDED.

[Opinion delivered March 5, 1886.]