GALTEX PROPERTY INVESTORS, INC., Steven R. Fincher, and George Burchfield d/b/a Burchfield Demolition Company, Appellants,

v.

CITY OF GALVESTON, Appellee,

and

In re Galtex Property Investors, Inc., Steven R. Fincher, and George Burchfield d/b/a Burchfield Demolition Company, Relators.

Nos. 14–02–00572–CV, 14–02–00811–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 2003.

Robert A. Plessala, Houston, for relators.

Stephen G. Schulz, Galveston, for respondent.

Panel consists of Justices ANDERSON, CHARLES SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Galtex Property Investors, Inc., Steven R. Fincher, and George Burchfield (d/b/a Burchfield Demolition Company) (collectively, "appellants") appeal a judgment in favor of the City of Galveston ("the City") in connection with appellants' failure to timely demolish a property that had fallen into disrepair. Specifically, appellants contend that (1) a private party cannot recover damages in a contempt proceeding; (2) they were denied a trial by jury in violation of the United States and Texas Constitutions; (3) they were excessively fined and their property was taken without due process of law; and (4) the trial court improperly entered a final summary judgment based upon the balance of an unpaid judgment for contempt. Appellants urge almost identical issues in a petition for writ of mandamus. We deny the petition for writ of mandamus but reverse and remand on the appeal.

## I. BACKGROUND

Until August 2000, Galtex owned a shopping center in Galveston known as Galvez Mall. On August 7, 2000, the City filed suit against Galtex, Steven Fincher (a principal of Galtex) and George Burchfield, claiming that the property was in violation of various city ordinances. The City sought assessment and an award of civil penalties for violation of the ordinances. In addition, the City sought a temporary and permanent injunction ordering appellants to bring the property into compliance with the ordinances. The City requested permission to demolish and remove the buildings on the property, if Galtex was unwilling or unable to comply with the city ordinances.

After the trial court set a hearing on the temporary injunction, the parties entered into an agreed order that was approved by the trial court on September 1, 2000. In the agreed order, the parties stipulated that appellants would demolish and remove all buildings located on the property by October 31, 2000 and would remove all building slabs and building slab debris by December 31, 2000. Additionally, if appellants did not timely demolish the buildings, appellants agreed to pay the City a civil penalty of $2,500 per day to accrue from August 30, 2000 until the date the buildings were demolished. The parties, however, did not address in the agreed order the City's claims for damages relating to violation of the city ordinances.

Shortly after the trial court entered the agreed order, Galtex filed Chapter 11 bankruptcy and an automatic stay in a separate proceeding before a bankruptcy court. Appellants obtained permission from the bankruptcy court to sell the property, and the bankruptcy court directed that $300,000 of the sale proceeds be paid into the court's registry for the benefit of the City pending determination of the validity and extent of the City's claims.

■ Appellants failed to demolish the buildings by the deadline in the agreed order, and the City thereafter filed a motion for contempt against appellants on February 27, 2001. On April 25, 2001, the trial court signed a "Judgment of Contempt" (hereinafter "contempt judgment"), ordering appellants to pay the City (1) $10,000 in attorney's fees and (2) $337,500 in penalties. Subsequently, the City moved to modify the contempt judgment because the trial court improperly stated in it that all parties and claims had been finally disposed of and that the contempt judgment was appealable.[1] The trial court granted the motion and modified the contempt judgment on May 21, 2001. Pursuant to this order, the City received the $300,000 in the court registry.

On March 27, 2002, the City filed a motion for summary judgment, seeking the balance owed under the contempt judgment. On April 23, 2002, the trial court granted summary judgment to the city and awarded the city $47,141.40, the balance the court determined was owed under the terms of the agreed order. On August 2, 2002, appellants filed notice of their intent to appeal the contempt judgment and the summary judgment.

On August 9, 2002, appellants filed a petition for writ of mandamus, arguing that the trial court abused its discretion by improperly enforcing the terms of the agreed order through contempt proceedings. Appellants specifically argue that the trial court exceeded its contempt power under section 21.002 of the Texas Government Code and that the trial court

---

1. The city sought this modification because contempt orders are not appealable. *Metzger v. Sebek*, 892 S.W.2d 20, 54 (Tex.App.-Houston [1 Dist.] 1994, writ denied).

awarded the city a pre-judgment collection remedy without complying with Texas laws and procedures. Appellants subsequently filed an amended petition for writ of mandamus on August 14, 2002.

## II. PETITION FOR WRIT OF MANDAMUS

 Appellants first request that we consider their petition for writ of mandamus, in which they challenge the contempt judgment, in conjunction with their appeal. We decline to do so.

 A writ of mandamus is an extraordinary remedy issued not as a matter of right, but at the discretion of the court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993) (orig.proceeding). Mandamus is largely governed by equitable principles. *Id.* Equity is intended to aid the diligent and not those who slumber on their rights. *Id.* Because mandamus is controlled by equitable principles, Texas courts often deny mandamus relief due to the petitioner's lack of diligence. *See, e.g., In re E. Tex. Salt Water Disposal Co.*, 72 S.W.3d 445, 449 (Tex.App.-Tyler 2002, orig. proceeding) (ten year delay precluded mandamus relief); *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 452 (Tex. App.-Fort Worth 2001, no pet.) (18 month delay); *In re Xeller*, 6 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) (16 month delay).

Appellants offer a number of reasons to explain the fourteen-month delay from the time the trial court entered its contempt judgment until the time they filed their petition for writ of mandamus, including (1) the money would not be unlawfully dissipated because it was paid to a municipal arm of the state; (2) a belief that the trial court would reconsider its contempt judgment upon a trial on the merits of the city's claims; and (3) a lack of effect of the trial court's contempt judgment on appellants' trial rights.

However, appellants fail to demonstrate that they were prevented from diligently seeking relief from the trial court's contempt judgment. Appellant's proffered justification for a fourteen-month delay merely demonstrates that they sought redress of their legal rights through ordinary means.

 Moreover, mandamus is an extraordinary remedy that is only available when a trial's court abuse of discretion cannot be remedied by appeal. *In re Bokeloh*, 21 S.W.3d 784, 787 (Tex. App.-Houston [14th Dist.] 2000, orig. proceeding). In this case, we will consider appellants' challenge to the contempt judgment on appeal; therefore, appellants have an adequate remedy at law, making mandamus inappropriate in this case.

## III. THE AGREED ORDER

 As a preliminary matter, appellants dispute the nature of the agreed order and urge us to consider it only as an agreement, not a temporary injunction. We decline to address the nature of the agreed order for two reasons. First, Rule 33.1 of the rules of appellate procedure requires an objection to and ruling by the trial court on an issue before it is raised on appeal. On this subject, we do not find that the trial court ruled, either implicitly or explicitly. Second, determination of the nature of the agreed order has no bearing on our disposition of appellants' four issues. Courts have no jurisdiction to issue advisory opinions. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000).

## IV. CONTEMPT JUDGMENT

In their first three issues, appellants attack the validity of the trial court's contempt judgment, contending that (1) the contempt judgment was not truly a con-

tempt proceeding; (2) a court may not award a fine of contempt to a private litigant; and (3) the contempt judgment is an excessive fine, is an improper taking, and wrongly deprives them of trial by jury. Because we find that the trial court's "judgment of contempt" was improperly denominated as a contempt order, and because we further find that the trial court erroneously awarded a money judgment following contempt proceedings, we sustain issues one and two. We need not address issue three.

### A. Nature of Contempt Judgment

Decisions in contempt proceedings may not be reviewed by an appellate court, even where a party seeks to appeal the contempt order along with a judgment that is appealable. *Metzger v. Sebek,* 892 S.W.2d 20, 54 (Tex.App.-Houston [1st Dist.] 1994, writ denied). However, appellants argue that the trial court's contempt judgment of May 21, 2001 does not come within the confines of a true contempt order and thus should be recharacterized. We note that it is not the form of the court's order, but the "character and function of the order that determines its classification." *See Del Valle Indep. Sch. Dist. v. Lopez,* 845 S.W.2d 808, 809 (Tex.1992).

A court has the inherent power to enforce its orders through contempt proceedings. *See Ex Parte Gorena,* 595 S.W.2d 841, 845 & n. 2 (Tex.1979). A court can exert its contempt power through two types of contempt orders— civil and criminal. *Ex Parte Hawkins,* 885 S.W.2d 586, 588 (Tex.App.-El Paso 1994, orig. proceeding). Criminal contempt orders and civil contempt orders serve distinct purposes. A criminal contempt order is used to punish a party for disobedience of a court order. *Id.* The maximum punishment that a district court can assess under its criminal contempt power is a fine

of not more than $500, or confinement in the county jail for not more than six months, or both. TEX. GOV'T CODE ANN. § 21.002(b) (Vernon Supp.2003). Alternatively, a civil contempt order is used to coerce a party to comply with an order of the court. *Hawkins,* 885 S.W.2d at 588. The statute does not limit the maximum fine that a court can impose through a civil contempt order. *See* TEX. GOV'T CODE ANN. § 21.002; *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 667–68 (Tex.App.-Fort Worth 2001, pet. denied).

The trial court's contempt judgment was not a criminal contempt order because it was not intended to punish appellants for violating the agreed order. Likewise, the contempt judgment was not a civil contempt order because it was not intended to coerce appellants to comply with the agreed order. Instead, the contempt judgment enforced a civil penalty to which the parties stipulated in the agreed order. Accordingly, we find that it was a misnomer for the trial court to label its order a "Judgment of Contempt." The order was actually a partial money judgment for civil penalties delineated in the agreed order. *Cf. Edrington v. Pridham,* 65 Tex. 612 (1886) (contempt order was actually a money judgment); *Transcont'l Gas Pipeline Corp. v. Am. Nat'l Petroleum Company,* 763 S.W.2d 809, 824 (Tex.App.-Texarkana 1988) (order actually awarded additional injunctive relief), *rev'd on other grounds,* 798 S.W.2d 274 (Tex.1990); *Credit Bureau of Laredo, Inc. v. State,* 515 S.W.2d 706, 710–11 (Tex.App.-San Antonio 1974) (proceeding was not for contempt, but was a suit for civil penalties,) *aff'd,* 530 S.W.2d 288 (1975).

### B. Propriety of the Contempt Judgment

Appellants further argue that the trial court improperly used contempt pro-

ceedings to award the City a civil judgment and a pre-judgment collection remedy without compliance with Texas law and civil procedure.

The law is well established in Texas that a court may not award a civil judgment to a private litigant in a contempt proceeding. *Cadle Co.,* 50 S.W.3d at 669; *see Cannan v. Green Oaks Apts.,* 758 S.W.2d 753, 754 (Tex.1988) (acknowledging that "[t]his court has earlier held that in a contempt proceeding a private party cannot recover damages for a violation of a court order."). The trial court erred in awarding the City, a private litigant, $347,500 in the contempt judgment.

Further, this case is closely analogous to *Edrington v. Pridham,* 65 Tex. at 612, in which the court reversed and remanded a money judgment awarded as a contempt order. In *Edrington,* the trial court first entered an order granting a receiver the power to take possession of all the property of a corporation. The treasurer of the corporation then used $2,500 of the corporate funds to pay attorney's fees, refusing to turn this amount over to the receiver. At the contempt proceeding against the treasurer, the trial court awarded a judgment to the receiver in the amount of $2,500. The Supreme Court reversed the judgment, stating, "[W]e cannot construe a judgment in favor of the receiver for $2,500, to be collected by execution, as an exercise by the court of its inherent power to fine for contempt." *Id.* at 617. The court reasoned that "valuable rights in the practice" may depend on the nature of the proceeding and that such rights may be lost if the nature of suit is confused. *Id.* at 618.[2] It concluded that "the judgment rendered was not prayed for ... [and] it was not warranted by the proceedings upon which it is predicated." *Id.*

As in *Edrington,* we cannot construe a money judgment for one party as an exercise of the court's power of contempt. *See id.* at 617. "Such a judgment does not vindicate the dignity of the court; it redresses private injury." *Id.* While the City may be entitled to recover the civil penalties contemplated by the agreed order, we hold it may not obtain such a judgment through contempt proceedings. Accordingly, we sustain issues one and two and hold that the trial court erred by using its contempt power to award a judgment in favor of the City. We reverse and remand the "Judgment of Contempt."

### V. SUMMARY JUDGMENT

In their fourth issue, appellants contend that the trial court erroneously entered a final summary judgment based on the unpaid balance of the $347,500 awarded in its contempt judgment. They argue that the City's pleadings do not conform with such a summary judgment. We agree.

The propriety of a summary judgment is a question of law subject to *de novo* review. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). "A motion for summary judgment must be supported by the pleadings on file, and the final judgment of the court must conform to those pleadings." *Krull v. Somoza,* 879 S.W.2d 320, 322 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *see also Elite Towing, Inc. v. LSI Fin. Group,* 985 S.W.2d 635, 641 (Tex.App.-Austin 1999, no pet.). Additionally, a trial court may not grant a summary judgment on an unpled cause of action. *McDuff v. Chambers,* 895

---

2. For instance, in *Credit Bureau of Laredo, Inc. v. State,* the parties were entitled to a trial by jury in a suit to impose civil penalties. *See* 515 S.W.2d at 710–11. The trial court had erroneously imposed the penalties as though through contempt. *See id.*

S.W.2d 492, 496 (Tex.App.-Waco 1995, writ denied).

In its original petition, the City sought temporary and permanent injunctive relief and the maximum civil penalties allowed ($1,000 a day) pursuant to sections 54.017 and 54.018 of the Texas Local Government Code. It did not seek attorney's fees. In its motion for summary judgment, the City claimed that it was entitled as a matter of law to full recovery as prayed for in its original petition. Specifically, the City claimed that it was entitled to the sum of $46,797.75, an amount which included $10,000 in attorney's fees. However, this amount bears no relation to the civil penalties that the City sought in its original petition. Rather, this amount is the balance allegedly owed as a result of appellants' violation of the agreed order.

The summary judgment did not conform to the pleadings in the case because it was not based upon the causes of action pled in the City's original petition. *See Elite Towing*, 985 S.W.2d at 641. Accordingly, the City was not entitled to final summary judgment for the balance owed under the contempt judgment. We sustain issue four and reverse and remand the summary judgment.

In conclusion, we deny appellants' petition for writ of mandamus. Further, we sustain appellate issues one, two, and four. Because of our disposition on issues one and two, we need not address issue three. Accordingly, we reverse the trial court's "Judgment of Contempt" and final summary judgment and remand for further proceedings consistent with our opinion.